IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JAMES ALBERT LANGLEY,

        Plaintiff,

v.                 CIVIL ACTION NO. 3:17-3520

ARRESTING OFFICER;
DR. CHARLES LYE;
DONNA WARDEN;
WARDEN DAVID BALLARD;
JIM RUBENSTEIN; and
WEXFORD HEALTH SOURCES INC.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss by Defendants David Ballard and Jim Rubenstein. ECF No. 150. For the following reasons, the Court **DENIES, in part,** and **GRANTS, in part,** the motion.

**I.
STANDARD OF REVIEW**

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court held that courts must look for "plausibility" in the complaint. 550 U.S. at 557. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level." *Id*. (citations omitted). If the allegations in the complaint,

assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted). Two weeks after issuing its decision in *Twombly*, the Court emphasized in *Erickson v. Pardus*, 551 U.S. 89 (2007), that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555; other citations and some internal quotations omitted). Additionally, when documents are filed by a *pro se* litigant, those documents must "be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id*. at 94 (internal quotation marks and citations omitted). It is in this light that the Court must evaluate Plaintiff's Amended Complaint to determine if it can survive Defendants' 12(b)(6) motion.

## II.
## DISCUSSION

As explained more fully in the Proposed Findings and Recommendation (PF&R) entered on January 9, 2018, *sub nom Langley v. Huntington Police Dep't*, Civ. Act. No. 3:17-3520, 2018 WL 652866 (Jan. 9, 2018), and as adopted by this Court on January 31, 2018, *Langley*, 2018 WL 650208 (Jan. 31, 2018), Plaintiff James Albert Langley filed this action *pro se* against several entities and individuals alleging negligence and Eighth Amendment violations for "failing to provide him with appropriate and necessary medical care." 2018 WL 652866, at *1.[1] Plaintiff's

---

[1] Plaintiff was *pro se* when he filed the Complaint and Amended Complaint and, per Standing Order, this action was referred to the Magistrate Judge. ECF No. 9. After the Magistrate Judge issued his PF&R, he granted Plaintiff's Motion for Appointment of Counsel (ECF No. 153), and the case was unreferred. Plaintiff's counsel filed a Response to the motion currently before the

medical issues arose after he escaped from a work release program, wrecked the vehicle he was driving, and sustained injuries. *Id*. Plaintiff states he asked to go to the hospital for treatment after the accident but, instead, he was taken to the police station and then to the Western Regional Jail. *Id*. Plaintiff claims his injuries from the accident were so severe that he needed help to get off the jail floor. He asked again to go to the hospital, but his request was denied. *Id*.

After two days at the Western Regional Jail, Plaintiff was transferred to the Mount Olive Correctional Complex ("MOCC"), where he was listed to be evaluated by a physician *Id*. at *2. Plaintiff complains that the doctor only superficially examined him and that he did not receive adequate medical care. Plaintiff asserts that from the date of his transfer on July 13, 2015 through November 1, 2015, he made thirteen sick call requests. *Id*. Plaintiff states he finally received a chest x-ray on October 21, 2015, and the radiologist recommended he receive a CT scan at the hospital. *Id.* Nevertheless, Plaintiff claims he was kept in the MOCC infirmary for another ten days. *Id*. Plaintiff states he finally was transferred to the hospital on November 1, 2015, where he underwent surgery on his left lung and spent eighteen days in a surgical intensive care unit. *Id*. Due to these events, Plaintiff asserts "he has lost partial use of his left lung, nerve damage to his complete left side, and his diaphragm is disconnected from his lung." *Id*. He also claims to have suffered kidney damage from the high doses of medication he received at the MOCC infirmary, and he asserts he is now disabled and permanently disfigured. *Id*.

In addition to his sick call requests, Plaintiff states he filed seven grievances from July 13 through November 1, alleging inadequate medical care, but all his grievances were denied.

---

Court. ECF No. 158.

*Am. Compl.* at 5, ECF No. 50. Plaintiff complains that Defendant Jim Rubenstein, former Commissioner of the West Virginia Department of Corrections, Defendant David Ballard, Warden of the MOCC, and Defendant Donna Warden, the Health Service Administrator, violated the Eighth Amendment by denying his requests without ever investigating his complaints and by acting deliberately indifferent to his medical needs. *Id.* at 8-9.[2]

In their Motion to Dismiss, Defendants Ballard and Rubenstein argue Plaintiff's assertion that they were deliberately indifferent to his plight is based merely upon generic allegations, which are insufficient to support his claim. In addition, they assert they are not "persons" under 42 U.S.C. § 1983 and, thus, not subject to suit under the statute. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (stating "neither a State nor its official acting in their official capacities are 'persons' under § 1983"); Syl. Pt. 3, *Pruitt v. W. Va. Dep't of Pub. Safety*, 664 S.E.2d 175, 181 (W. Va. 2008) (holding that, under *Will*, neither the State of West Virginia nor officials acting in their official capacities for the State of West Virginia, are persons under § 1983). On the other hand, Plaintiff argues the motion should be denied because he has set forth sufficient facts to support his action against Defendants Ballard and Rubenstein in their personal capacities and, therefore, they are subject to § 1983 liability. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) (providing that state officials are "persons" under § 1983 when sued in their individual capacities, and as such may be held personally liable for damages). As indicated by Plaintiff, these arguments are nearly identical to the arguments rejected by this Court with respect to Defendant Warden.

---

[2]Plaintiff also stated this claim against the WVDOC and insisted it should have had a "fail safe" against such actions. *Id*. at 9.

As set forth in the earlier PF&R, Defendant Warden argued there were no direct claims against her to establish a deliberate indifference claim. 2018 WL 652866, at *17. Plaintiff responded that he filed grievances with her complaining about his lack of medical care and that she acted with deliberate indifference in not answering or responding to those grievances. *Id*. In considering the issue, the Court explained that "a plaintiff must show a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive [practices]." *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984); internal quotation marks omitted). Construing Plaintiff's Complaint liberally and assuming the truth of his allegations, the Court found that the claims against Defendant Warden survived a motion to dismiss because it was alleged she was made aware of Plaintiff's serious medical needs through the grievances he filed, yet she showed deliberate indifference to his medical needs or tacit authorization of his medical needs not being addressed, which created an unreasonable risk to him. *Id*. at *18. The Court found these allegations were not based upon vicarious liability but, instead, on the personal and purposeful constitutional violations of Defendant Warden's own supervisory responsibilities. *Id*. Thus, Plaintiff could proceed with his claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." (citations omitted)).

Although Defendants Ballard and Rubenstein held different positions than Defendant Warden, the same logic follows because Warden, Ballard, and Rubenstein were

grouped together in the Amended Complaint and the allegations are substantially the same for all of them.³ Defendants Ballard and Rubenstein were just further up the chain of review of Plaintiff's grievances. Therefore, for the reasons stated with respect to Defendant Warden, the Court finds Plaintiff's claims are sufficient to proceed against Defendants Ballard and Rubenstein in their personal capacities under § 1983.

Defendants Ballard and Rubenstein further argue that they are entitled to qualified immunity. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). When qualified immunity is raised, a court may consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009).⁴ If the allegations do not give rise to a constitutional violation, the inquiry stops. *Id.* On the other hand, if a violation can be shown, then the court should decide whether the right was clearly established in the specific context of the case. *Id*.

---

³Plaintiff's Amended Complaint provides, in relevant part: "By all of my grievances being denied from: Donna Warden then to Warden David Ballard then to Commissioner Jim Rubenstein, no actual look into the problem I was grieving was ever actually done. It shows: A deprivation of basic human need, (medical care and reasonable safety) and deliberate indifference on all parts." *Am. Compl.* at 8-9.

⁴In *Pearson*, the Supreme Court overruled the mandatory two-step process for analyzing qualified immunity as adopted in *Saucier*. After *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236.

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In *Farmer v. Brennan*, 511 U.S. 825 (1994), the United States Supreme Court stated that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate . . . medical care[.]" 511 U.S. at 832; *see also Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016), *cert. denied sub nom. Phillip v. Scinto*, 138 S. Ct. 447 (2017) (other citations omitted) ("A prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976[.]"). Additionally, the Supreme Court held that a prison official's actual subjective awareness of excessive risk to an inmate's safety is required for liability under the Eighth Amendment. *Id*. at 837. An official cannot be held liable for a failure to alleviate a risk that should have been perceived, but was not in fact perceived. *Id*. at 838.

In viewing the allegations in this case in the light most favorable to Plaintiff on a motion to dismiss, the Court finds Plaintiff sufficiently has alleged that his clearly-established Eighth Amendment right to receive adequate medical care was violated. Plaintiff asserts he suffered a serious medical need, he was denied adequate medical care, and Defendants Ballard and Rubenstein were ignoring his grievances and were deliberately indifferent to his medical needs. *See Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir.1999)) (internal quotations omitted) ("[A] 'serious . . . medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention.'"). Given these allegations, the Court finds dismissal of Plaintiff's claims on qualified immunity grounds is inappropriate.

Defendants Ballard and Rubenstein also argue that Plaintiff's claim for monetary damages under Article III, § 5 of the West Virginia Constitution should be dismissed. In his Response, Plaintiff concedes that West Virginia's Constitution does not recognize claims for monetary damages. Thus, the Court **GRANTS** Defendants' motion in this respect. Defendants further argues that Plaintiff cannot pursue punitive damages against them pursuant to West Virginia Code § 55-17-4(3).[5] However, as indicated by Plaintiff, this Court previously has explained that punitive damages are not prohibited when defendants are sued in their individual capacities. *Lavender v. W. Va. Reg'l Jail & Corr. Facility Auth.*, Civ. Action No. 3:06-1032, 2008 WL 313957, at *9 (S.D. W. Va. Feb. 4, 2008) ("As this Court has determined that the Correctional Officers in this case are being sued in their individual capacities and not their official capacities, the Court finds punitive damages are not prohibited under these sections and, therefore, the Court denies the Correctional Officers' motion to dismiss this claim." (emphasis deleted; citation omitted)); *see also Rosenthal v. Jezioro*, No. 2:08-CV-81, 2008 WL 4900563, at *6 (N.D. W. Va. Nov. 13, 2008) ("The defendants' final argument is that the plaintiff's claim for punitive damages is barred by West Virginia Code § 55-17-4(3) . . . . [T]he statute has no application to actions brought against the defendants in their individual capacity."). Therefore, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' claim for punitive damages.

---

[5]This section provides: "Notwithstanding any other provisions of law to the contrary . . . [n]o government agency may be ordered to pay punitive damages in any action." W. Va. Code § 55-17-4(3). A "government agency" is defined, in part, as "a constitutional officer or other public official named as a defendant or respondent in his or her official capacity[.]" W. Va. Code § 55-17-2(2), in part.

## III.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendants Ballard and Rubenstein's Motion to Dismiss in all respects, except the Court **GRANTS** Defendants' motion with respect to Plaintiff's demand for monetary damages under Article III, § 5 of the West Virginia Constitution.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: September 21, 2018

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE